Syllabus.

# Richmond.

## SHOWALTER'S EXECUTORS v. SHOWALTER AND OTHERS.

### January 16, 1908.

1. ELECTION BY WIDOW—*Devise of Wife's Land—Dower—Code, Sec.* 2271.
—Where a testator disposes of property belonging to his wife in
her own right, and also makes provision for her by his will, she
has the same right of election as to such property as any other
person, and whether or not she has elected to take under or against
the will is to be determined as in other cases. The provisions of
Sec. 2271 of the Code have no application to such a case.

2. ELECTION OF WIDOW—*How   Made—Evidence   of   Election—Case   in
Judgment.*—The election of a widow to accept the provisions of her
husband's will in lieu of what she would otherwise be entitled to
according to law may be made in express terms, or may be implied
from acts and conduct, but in either event it must have been with
knowledge of her rights and with the intention of election.   To
raise an inference of election from her conduct, where the rights
of others have not been affected, it must appear that she knew of
her right of election, and clear proof must be furnished of a choice
on her part to accept the provision made by the will and to reject
what she would otherwise be entitled to.   Ambiguous acts and con-
duct will not, in general, be construed as an election.   In the case
in judgment every act relied upon as election by the widow was
performed by her at the instance of her sons, who were the execu-
tors of her husband's will, and within less than a month after his
death, and were of such an equivocal nature as not to amount to
an election.   During the two months which elapsed between her
husband's death and the date of the renunciation of his will she
remained in the mansion house occupied by him at the time of his
death and which was devised to her for life, but this she had a
right to do as widow until dower was assigned, and her selection
and acceptance of a cow and two hogs and her continued posses-
sion of other personal property might well have been referred to

the assertion upon her part of her statutory rights as widow. The deed of renunciation is ample for that purpose, and no one is placed in any worse position by the renunciation than he would have been had the renunciation been made on the day of her husband's death.

3. EQUITY. PRACTICE—*Suppression of Depositions taken after Case Submitted.*—The suppression of the depositions of the complainants in this cause, taken after the case had been argued and submitted, was not error under the circumstances of this case. The cause had been pending for some time, and they had already testified more than once.

4. EXECUTORS AND ADMINISTRATORS—*Payments to Distributees.*—Under the circumstances of this case, and there being no evidence of unsatisfied debts against the estate of the testator, nor of costs and charges superior in right to the widow's claim as a distributee, it was not error to decree to her out of the fund in hand the immediate payment of a large part of the sum to which she was entitled as a distributee of her husband's estate.

Appeal from a decree of the Circuit Court of Augusta county. Decree in favor of defendant, Elizabeth R. Showalter. Complainants appeal.

*Affirmed.*

The following is a copy of the deed of renunciation referred to in the opinion of the court:

"Know all men by these presents, that whereas Henry A. Showalter, of Augusta county, Virginia, departed this life on the 1st day of October, 1905, seized and possessed of a considerable real and personal estate; and whereas the said Henry A. Showalter in his lifetime made his last will and testament with codicils thereto according to law which has been probated before the clerk of the circuit court of said county and recorded in the clerk's office of Augusta county in Will Book No. 60, pages 7, 8, 9, etc., which will contained the following clauses, to-wit:

" '1st. I devise unto my wife, Elizabeth R. Showalter, should

she survive me, the tract of land situated at Weyer's Cave, containing 19 acres, 2 roods and 20 poles, with all the improvements thereon for the term of her natural life, or so long as she remains my widow.  After her death, to be sold and conveyed by my executors as my other lands are hereinafter directed to be sold; and the proceeds of said sale to be divided as the proceeds of my other property.'

" '2nd. I give to my said wife, Elizabeth R. Showalter, should she survive me, all of my household and kitchen furniture, including washing machine, tubs, kettles, buckets, &c., garden tools, one buggy and harness, a good and gentle horse, a cow and two hogs, and I direct my executors hereinafter named, to pay to my said wife, one hundred dollars ($100.00) out of the first moneys coming into their hands, provided she has not that much money in hands, and to set apart the sum of two thousand dollars ($2,000.00) out of my estate, the net proceeds of which sum shall be paid to her annually during her life, for her support, the principal, upon her death to revert to my estate and be distributed as a part thereof under the subsequent provisions of this my last will.'

"And whereas, I, Elizabeth R. Showalter, widow of Henry A. Showalter, deceased, am the devisee and legatee mentioned in the said clauses and provisions of the said will and desire to waive and renounce the same:

"Now, therefore, I, Elizabeth R. Showalter, widow of said Henry A. Showalter, deceased, and of Augusta county, do hereby waive and renounce the said clauses and provisions of the said will of Henry A. Showalter, deceased, and elect to claim such share of my said husband's estate, real, personal and mixed as I would have had if he had died intestate.

"Witness my hand and seal this the 8th day of December, in the year 1905.

  "ELIZABETH R. SHOWALTER.   (Seal.)"

*Bumgardner & Bumgardner* and *Sipe & Harris,* for the appellants.

*Quarles & Pilson,* for the appellee.

KEITH, P., delivered the opinion of the court.

The executors of Henry A. Showalter filed their bill in the circuit court of Augusta county, in which they show that their testator departed this life on the 1st day of October, 1905, having first made his last will and testament, bearing date on the 15th day of May, 1903, with various codicils thereto attached; that his will was admitted to probate, and his executors qualified, on the 7th day of that month; that by the first and second clauses of said will certain provisions were made for Elizabeth R. Showalter, his widow, and after full conference with her, and under her direction, they set apart and delivered to her the property specifically bequeathed, and placed her in possession of the homestead and nineteen acres of land devised to her for life; that in taking and receiving the chattels given to her by the first and second clauses of the will, the widow claimed that she was entitled to choose and select the cow and two hogs, and the stock so selected were set apart and were neither appraised nor sold by the executors; that the executors were directed by the will to pay to the widow the sum of $100 out of the first money that should come into their hands, and that they, having received the cash from the purchaser of the property sold by them, pointed out to and read to the widow the first and second clauses of the will and offered to her the sum of $100, given to her by the said will, and she being fully acquainted with the provisions of the will, and that the executors were offering and proposing to pay to her the said sum of money because it was given to her by said will, formally receipted to the executors for that sum; and it is claimed that by

that acceptance she deliberately and conclusively elected to accept the provisions of the will in her favor.

It is further alleged in the bill, that some time in the month of May, 1903, the testator, desiring to make sale of a valuable tract of land in Augusta county, and in connection therewith to make final testamentary disposition of his property, took these matters under consideration with his wife, who called in friends to advise with her; and that, acting with full knowledge and advice, the sale of the farm was made, and the will, bearing date on the 15th day of May, 1903, was agreed upon and executed; and that so well understood was the contract made and entered into at that time between the testator and his wife, that a copy of the said will was made by one of the parties with whom she was consulting as her adviser, and under her directions placed in his hands. The complainants charge that thereupon the testator in conjunction with his wife made and executed a coveyance of the land; that, without such agreement and acceptance of the provisions of the will, the real estate would not have been converted into personalty by the testator, and other provisions of the will in favor of other legatees would not have been made, it being distinctly understood and agreed between the testator and his wife, that she would accept the provisions for her benefit if her husband would make certain devises and bequests in favor of her daughters, Mary C. and Hettie E. Showalter; that, relying upon this understanding and agreement, the testator sold the farm, received the sum of $8,000 in cash, subsequently collected a considerable portion of the purchase money, and proceeded to advance these sums to his several children, but not always in equal amounts, in accordance with the general plan as shown by his said will; none of which things would have been done but for the contract and agreement between himself and his wife.

It further appears from the bill that on the 8th day of December, 1905, the widow made and executed a paper writing,

filed as an exhibit with the bill, purporting to be a renunciation of the provisions made for her by her husband's will. The bill charges that this renunciation of the provisions of the will was procured from the widow through the undue influence of certain of her children, exerted upon her to such an extent as to destroy her free agency and to coerce her into an attempt to violate the contract made and entered into between her and her husband.

Other matters contained in the bill are not pertinent to the issues now to be considered. It concludes with the prayer that the court will decree that the widow is estopped or precluded by the agreement hereinbefore stated from renouncing the provisions of the will and claiming her dower in the real estate and her distributive share in the personal estate, and that she, by her own acts before recited, be held to have elected to accept the provisions of the will made in her favor; and that the court will adjudge and declare specifically how the estate of the testator shall be distributed, under all of the circumstances of the case.

The widow filed her answer, in which she denies that the property given to her by the will was set apart to her by the executors after a full conference with her—that the personal property bequeathed to her was left upon the premises by the executors, where she resided and where it was at the time of the death of her husband, and was not sold by them; but she denies that she gave any direction as to setting aside the personal property, except that she indicated to the executors the cow and the two hogs she preferred when requested by them to make the selection. She denies that she was put into possession of the nineteen-acre tract of land by complainants; but says that she was residing on the land at the time of her husband's death, and has simply continued to reside there from that date; that the 19-acre tract consists of three small adjoining parcels, one of 3 acres and 19 poles, which was conveyed to her husband and herself by deed dated October 1, 1900, for the sum of $3,000; that the mansion house and other improvements are located on

this tract; and that she was residing at the time of her husband's death upon this tract, and has ever since resided there. She denies that the will was read at the time the sum of $100 was paid to her, but her account of this transaction is that the executors, soon after they qualified as such, and not long after the death of her husband, came to her home while she was in the deepest grief and sorrow over the death of her husband, and proposed to pay her the $100, and urged her to receipt for this sum in a hurry, saying that the receipt was simply intended to show that she had received the money, and assigning as a reason for their haste that they wished to return to their homes.

Upon these issues, a great amount of testimony was taken, and we agree with the circuit court, that with respect to the alleged contract under which it is claimed the will was made, the preponderance of evidence is clearly with the widow, and does not sustain the contention that there was an agreement by which the widow bound herself to abide by the provisions of the will, or justify the charge that she has acted in bad faith.

Nor do we think that the doctrine of election applies to her undivided interest in the three acres and nineteen poles tract, which had been conveyed to her husband and to her, jointly.

In *Pence* v. *Life,* 104 Va. 518, 52 S. E. 257, Judge Buchanan, discussing the provisions of section 2271 of the code, said: "The provisions of the statute have no application, as we understand them, to a case like that we are now considering. They were intended to provide how a widow must proceed who desires to reject the provisions made for her by her husband's will and of property other than her own, and to take such interest in his lands as the law gives her. Where a testator disposes of property belonging to his wife, in her own right, and also makes provision for her by his will, she has the same right of election as to such property as any other person, and whether or not she has elected to take under or against the will is to be determined as in other cases." Citing a number of authorities.

There can be no doubt that Mrs. Showalter's undivided one-half interest in the 3 acres and 19 poles tract continued to be her property after the renunciation of the will.

This brings us to the consideration of the remaining and principal ground of contention in this case: Did the widow irrevocably elect by her acts and conduct to accept the provisions of her husband's will, so as to preclude her from the exercise of the right of renunciation?

In Pomeroy Eq. Jur. sec. 515, it is said: "To raise an inference of election from the party's conduct merely, it must appear that he knew of his right to elect, and not merely of the instrument giving such right; and that he had full knowledge of all the facts concerning the parties. As an election is necessarily a definite choice of the party to take one of the properties and to reject the other, his conduct, in order that an election may be inferred, must be done with an intention to elect, and must show such intention."

In 1 Jarman on Wills 435 (m. p.), it is said: "In order to presume an election from the acts of any person, that person must be shown to have had a full knowledge of all the requisite circumstances, as to the amount of the different properties, his own rights in respect to them, etc.; and a person having elected under a misconception is entitled to make a fresh election."

2 Min. Inst. (4th ed.) at p. 1006, is as follows: "It is well established that no one shall be constrained to make an election until the interests to which the election relates are clearly defined, and their relative values ascertained; and an election made before that is done, will, for the most part, be disregarded, at least if it be made under mistaken impressions as to the facts; but only upon the terms (supposing the election to have been unambiguously made) of restoring other persons, whose rights are affected by the party's act of election, to the same situation substantially as if that act had not taken place." And at page 1008 the same author says: "Clear proof of an election made

must be furnished, and ambiguous acts and conduct will in
general not be so construed, unless in those cases where the in-
terests of others have been affected by the acts and require that
they should be interpreted to amount to an election.   *   *   *
The proof of an election made may be either express, in terms,
or it may be, and most frequently is, implied from acts and con-
duct, such as acceptance and acquiescence; but in either case it
must have been with knowledge of the party's rights and with
the intention of election." *Taylor* v. *Browne,* 2 Leigh 417;
*Upshaw* v. *Upshaw,* 2 Hen. & Munf. 381, 3 Am. Dec. 632;
*Hill* v. *Houston,* 15 Gratt. 357; *Penn* v. *Guggenheimer,* 76
Va. 850.

The testator died on the 1st of October, 1905; his will was
admitted to probate on the 7th day of October, 1905; and the
executors qualified on the same date.   On the 8th of December,
1905, the widow executed a paper, which is filed as "Exhibit R"
with the bill, in which, after reciting the death of her husband,
the probate of his will, and the provisions made for her in it,
she says: "Now, therefore, I, Elizabeth R. Showalter, widow
of said Henry A. Showalter, deceased, and of Augusta county,
do hereby waive and renounce the said clauses and provisions of
the said will of Henry A. Showalter, deceased, and elect to
claim such share of my said husband's estate, real, personal and
mixed as I would have had if he had died intestate.   Witness
my hand and seal this, the 8th day of December, in the year
1905."   Her signature to this paper was acknowledged before
a notary public on the 8th day of December, 1905, and was on
the same day admitted to record in the clerk's office of the cir-
cuit court of Augusta county.

The acts which are relied upon as showing an intelligent
election to accept the provisions of the will and to estop the
widow from exercising the right of renunciation are:   (1) That
she was put into possession of the tract of land at Weyer's Cave,
which, together with its improvements, was given to her during

her life.  A sufficient answer to this is,-that she was living on this tract with her husband at the time of his death, and continued to reside there, as she had a right to do under the law until dower was assigned to her.

The selection and acceptance of the cow and two hogs, and the continued possession of other personal property named in the will are equivocal acts which may with propriety be referred to the assertion upon her part of her statutory rights as widow, and do not necessarily imply that she knew of her right of election, and that she made it with a full knowledge of all the facts necessary to its intelligent exercise.  Every act relied upon by the executors to estop their aged mother from the exercise of the right of renunciation was performed by her at their instance and request within less than a month after the death of her husband.

In *Dixon* v. *McCue,* 14 Gratt. 561, Judge Daniel, speaking of a widow's renunciation, says:  "I do not think she has done anything which deprives her of the right to make her election now.  Her retaining possession of the farm after her husband's death, does not of itself furnish conclusive evidence of her having elected to accept the provisions made for her by the will.  Her possession down to the period of the advertisement of the farm for sale by the executor was, unexplained, conduct of an equivocal character, susceptible of reference, either to her rights as widow of the testator, or to rights conferred upon her by the will.  No state of things has grown out of her action in the matter, to disturb which now would work wrong or injury to others.  It is true, that in her bill she discloses the fact that in retaining possession she had been acting under her husband's will, but under her husband's will as she construed and understood it.  She states in the bill that had she not conceived herself entitled under the will to retain the farm to enable her to raise the children, she would have renounced the will, and claimed that share of her husband's estate to which she would have been

entitled by law. It is true, we have already expressed our concurrence with the judge of the circuit court in the opinion that the construction of the will for which she contends is not the true one. But we have no reason for supposing that she did not in fact interpret the will as she says she did; or that she did not in good faith shape her conduct by such interpretation. I think we shall act in thorough accordance with the decisions on the subject in holding that the widow has not yet made an irrevocable election."

That case was far stronger against the widow than the one under consideration. Not only are the acts relied upon here to estop the widow equivocal in their nature; but they do not in any degree place any party to the controversy in any worse position than they would have occupied had the widow renounced the will at the instant of her husband's death.

In the petition for the appeal it is assigned as error, that after the case had been argued and submitted, the depositions of John A. Showalter and Jacob A. Showalter were taken, over the protests of the defendants, and sent to the judge of the circuit court, who refused to consider them.

These men were executors of the estate. They had filed the bill. They were perfectly familiar with every detail connected with the case; and they had already testified more than once. It is inconceivable that there was any fact within their knowledge which they had not had ample opportunity to bring before the court. Under such circumstances, we cannot say that the circuit court erred in suppressing their depositions. But, if this were so, it would be harmless error, as the depositions show nothing which should have influenced the decision of the cause.

We are of opinion, therefore, that the widow was within her rights in renouncing the will, and that the paper marked "Exhibit R" was a sufficient evidence of election and renunciation under section 2271 and 2559 of the code, and entitled her to demand dower in the real estate of her husband and such dis-

tributive share of his personal estate as she would have had, had he died intestate.

The fourth assignment of error is because the executors were directed forthwith to pay to the widow the sum of $5,233.33. It is claimed that this order of disbursement is premature, considering the condition of the case; that assuming the renunciation of the widow to be valid, the condition of the administration of the estate had not reached the stage under which the court could direct the disbursement of so large a sum to the widow on her distributive share.

It does not appear that at the date of the decree any debts of the estate remained unsatisfied, or that there were any costs and charges superior in right to the widow's claim as a distributee, which rendered the payment to her improper.

We are of opinion that the decree of the circuit court should be affirmed; and that the cause be remanded to be further proceeded in to a final decree.

*Affirmed.*