**DUNN et al. v. VINYARD. (No. 2389.)**

(Court of Civil Appeals of Texas. Texarkana. July 5, 1921. Rehearing Denied Oct. 6, 1921.)

1. Wills ⟨key⟩792(3)—Facts held not to show election to take under will where widow had no knowledge of value of estate or right of election.

That a widow, whose husband's will undertook to dispose of the entire community estate, expressed herself as satisfied with the will, acted with others named with her as executors in having it probated, thereafter with them qualified as executrix, and with them returned an inventory in which the community property was mentioned as property of her husband's estate, and used monthly a sum of money belonging to the estate for support of herself and daughter, etc., *held* not to show an election to take under the will, where there was no showing that she knew the value of the estate nor what its annual income was, nor that she knew she had a right to elect until about two weeks before she died, when the testimony indicated that she then determined not to take under the will, and the sums from the estate which she used for her support were less than the amounts she would have been entitled to had she elected not to take under the will.

**2. Witnesses ⬦159(1.)—Testimony of executors held incompetent.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, in suit by executrix of wife against the executors of her husband, it was proper to exclude testimony of defendants as to transactions they had with plaintiff's testatrix, and as to statements she made to them.

**3. Partition ⬦53—Court could appoint receivers.**

In suit by executrix of wife against the executors of her husband, to partition the community estate, the court's action in appointing a receiver to take charge of the property until the partition could be made was proper, as against the objection that he was without power to make such an appointment, and so deprive independent executors of rights conferred on them by the will.

**4. Wills ⬦759(3)—Executors of husband need not account for advancements made by husband to children in his lifetime.**

In suit by executrix of wife against the executors of her husband, to partition the community estate, defendants were not bound to account for advancements made from the community property by their testator 6 or 7 years before his death to his children by his two former wives, his right at that time to control property belonging to the community estate between him and his wife being, in the absence of fraud, absolute, under Rev. St. 1911, art. 4622.

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Suit by Leana Vinyard, individually and as independent executrix, against W. F. Dunn and others. Judgment for plaintiff, and defendants appeal. Reformed and affirmed.

E. E. Dunn, a widower with children by two deceased wives, and Mary E. Hill, a widow without children, were married June 11, 1876. No child was born of the marriage. Dunn died testate November 9, 1917, leaving said Mary E. and children and descendants of children by his deceased wives surviving him. The property Dunn owned at the time he died consisted alone of his interest in the community estate between him and said Mary E. He undertook by his will, dated October 19, 1916, to dispose of the whole of that estate by providing that said Mary E. should take same and should use and enjoy the "rents, revenues, profits, interest, and income" thereof (except of 40 acres of land and certain jewelry, which he bequeathed to his son W. F. Dunn) for life, but charged with the support and maintenance of the testator's daughter, Mary L. Wright, during her life, and without power in said Mary E. to sell or otherwise dispose of any part of said estate, as is shown by parts of the will as follows:

"Item Fourth. I further will and direct that all of my real estate and personal property, including money on hand at the time of my death, promissory notes, accounts and evidence of indebtedness due to me (except the property devised and bequeathed to William Dunn as aforesaid) shall be kept intact, and shall constitute the principal of my estate, and that nothing shall be sold or disposed of until after the death of my wife and my daughter Mrs. Mary L. Wright."

"Item Sixth. It is my will and I so direct that no partition or division of the property of my estate be made until after the death of my wife Mary E. Dunn and my daughter Mrs. Mary L. Wright, but that my said property be kept intact and the principal thereof, and any surplus over and above a comfortable living and support for my wife and daughter Mary L. Wright, be safely invested by my executors in interest-bearing securities."

The testator provided that, on the death of his wife and said Mary L. Wright, "that is to say," quoting, "upon the death of the one of them last dying," all the property of the estate should be converted into money, which was to go to his children, Mrs. Agnes Edens, Mrs. E. Gertrude Hyndman, Mrs. Martha I. Watts, and William F. Dunn, and to the children of his deceased daughters, Mrs. Allie Wilson, Mrs. Arabella Edens, and Mrs. Margaret Johnson, "equally, share and share alike," the children of each of the deceased daughters to "take their mother's share." The testator's wife, said Mary E., his son, William F. Dunn, his son-in-law, O. E. Hyndman and his grandson, J. N. Edens, were named as "joint executors" of the will, without bond and free of control by the probate court. By a codicil dated April 10, 1917, the testator designated his wife, Mary E., and grandson, J. N. Edens, "to be the persons," quoting,

"who are to have the sole power and authority to draw and sign checks on the bank for such current expenses as may be necessary to carry out the terms of said will, and in case of the absence or inability of said J. N. Edens to so act then my son William F. Dunn is authorized to act with my wife in drawing and signing such checks."

The will contained a recital as follows:

"The property and estate devised and bequeathed by this will is the community property of myself and my wife Mary E. Dunn, and by this will I am disposing of said estate and property as a whole, and as if the whole title and right to the same was in me. I have consulted my wife Mary E. Dunn on this point and she assures me that she is perfectly willing to accept and receive the provision I have made for her in this will, and I hope and trust that she will elect to take under this will."

The will was duly probated February 5, 1918.

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Mary E. Dunn died testate April 13, 1918. By her will, dated August 25, 1917, she bequeathed her entire estate to her sister, Mrs. Leana Vinyard, appellee here, who was named executrix without bond and free of control by the probate court. The will was duly probated August 14, 1918, when Mrs. Vinyard qualified as executrix by taking oath as such. An inventory and appraisement returned by her as executrix, showing Mary E. Dunn to have owned 75 acres of land in her own separate right, and a one-half undivided part of the property belonging to the community estate between her and said E. E. Dunn, deceased, was approved by an order of the probate court made September 27, 1918.

The suit was by Mrs. Leana Vinyard (joined pro forma by her husband, who died before the trial) in her capacity both as an individual and as independent executrix of the will of said Mary E. Dunn, deceased, against appellants W. F. Dunn, J. N. Edens, and O. E. Hyndman, both as individuals and as executors of the will of said E. E. Dunn, deceased, and against the other appellants, children and grandchildren of said E. E. Dunn, named as devisees in his will. The purpose of the suit was to partition the property belonging to the community estate of said E. E. Dunn and Mary E. Dunn, worth about $30,000, between Mrs. Vinyard, who, as the devisee of Mary E. Dunn, claimed to own an undivided one-half thereof, and certain of the appellants, who, as devisees of E. E. Dunn, owned one-half of said property, and claimed to own all of it. In her petition Mrs. Vinyard alleged that E. E. Dunn, during his lifetime, used property of the value of $11,963.75 belonging to the community estate between him and Mary E. Dunn in making advancements, in which said Mary E. did not join him, to his children. Mrs. Vinyard prayed that the advancements be taken into account in the partition she sought, and that same be charged against the interest owned by said E. E. Dunn in the community property. She further alleged that appellants W. F. Dunn, O. E. Hyndman, and J. N. Edens, as executors of the will of said E. E. Dunn, were in the exclusive possession and control of the property belonging to said community estate, and, claiming the exclusive right thereto by force of said will of E. E. Dunn, declined to recognize a right in her to share in such possession and control. She prayed the court to appoint a receiver to take charge of said property pending the suit, and until a partition thereof was effected.

Among other things, appellants alleged in their answer that Mary E. Dunn elected to take the provision made for her in the will of E. E. Dunn, and therefore that she (and Mrs. Vinyard, her devisee, as well) was estopped from asserting title to any of the property in any other right.

The appeal is from a judgment determining that Mrs. Vinyard owned a one-half undivided interest in the property in controversy, that appellants owned the other half thereof, but charged with the payment to Mrs. Vinyard of $2,730.35, being one-half of the value of advancements made by E. E. Dunn to his children out of property belonging to said community estate, directing a partition accordingly, and appointing J. N. Edens, one of the persons named, and who qualified as executor of the will of E. E. Dunn, as receiver to take charge of and manage and control the property under the direction of the court until the partition was effected.

R. E. Prince, of Corsicana, and Dexter Hamilton, of Dallas, for appellants.

Richard Mays and Callicutt & Johnson, all of Corsicana, for appellee.

WILLSON, C. J. (after stating the facts as above). The property E. E. Dunn undertook to dispose of by his will belonged to the community estate between him and his wife, Mary E. Dunn. Hence the latter, unless she had parted with her right thereto by electing in lieu of it to take the provision made for her in said will, at the time of her death owned an undivided one-half of the property (article 4622, Vernon's Sayles' Statutes), which half by force of her will passed to her sister, Mrs. Leana Vinyard. The trial court, being of opinion that the testimony did not warrant a finding that Mrs. Dunn elected to take under her husband's will, instructed the jury to return a verdict in favor of her devisee, said Leana Vinyard. The main contention presented by the assignments is that the instruction was erroneous, because, appellants insist, it conclusively appeared from testimony that Mrs. Dunn did so elect, or, if it did not so appear, that the testimony made an issue as to whether she did or not, which should have been submitted to the jury.

[1] It appeared from testimony relied on as supporting the contention that Mrs. Dunn, understanding that her husband had undertaken by his will to dispose of the entire community estate between them, expressed herself as satisfied with said will, acted with other persons named with her as executors in having it probated, thereafter with said other persons qualified as one of the executors, and with them returned an inventory in which said community property was mentioned as property of the estate of said E. E. Dunn; as executrix joined W. E. Dunn, an executor, in drawing checks against funds belonging to said community estate to pay debts it owed, and as such executrix joined J. N. Edens, also an executor, in loaning money belonging to said estate; continued after the death of E. E. Dunn, until she died, to use and occupy their homestead, and during that time used about $35 a month of money

belonging to said community estate for her own support and the support and maintenance of the testator's daughter Mrs. Wright.

It is plain that the facts mentioned did not demand a finding that Mrs. Dunn elected to take under her husband's will, and we think it is also plain, when those facts are considered with reference to applicable rules, that they did not warrant a finding that she so elected.

"Election is analogous to estoppel. It is hardly more than one kind of estoppel." Chief Justice Andrews, of the Connecticut Supreme Court of Errors, in Bank v. Curran, 72 Conn. 342, 44 Atl. 473.

"Estoppel in pais only arises when manifest justice and equity, as respects the interest of another, requires its application." Mr. Justice Dewey, in Fitts v. Cook, 5 Cush. (Mass.) 596.

"To raise an inference of election from the party's conduct merely, it must appear that he knew of his right to elect, and not merely of the instrument giving such right, and that he had full knowledge of all the facts concerning the properties. As an election is necessarily a definite choice by the party to take one of the properties and to reject the other, his conduct, in order that an election may be inferred, must be done with an intention to elect, and must show such an intention." 1 Pomeroy, Equity, § 515.

"Some free, disposable property must be given to the electing donee which can become compensation for what the testator sought to take away." Chief Justice Stayton, in Smith v. Butler, 85 Tex. 126, 19 S. W. 1083, quoting from Bigelow on Estoppel.

"In the absence of an express election, it must be shown that she [the widow] received something of value under the will to which she was not entitled otherwise." Chief Justice Finley, in McClary v. Duckworth, 57 S. W. 317.

As further stating and illustrating the principles applicable, see 2 Alex. on Wills, §§ 813, 826, 828; 40 Cyc. 1971, 1977, 1978; Pryor v. Pendleton, 92 Tex. 384, 47 S. W. 706, 49 S. W. 212; Campbell v. Campbell, 215 S. W. 134; Slavin v. Greever, 209 S. W. 479; Ry. Co. v. Somerville, 179 S. W. 671; Payne v. Farley, 178 S. W. 793; Williams v. Emberson, 22 Tex. Civ. App. 522, 55 S. W. 595; Carroll v. Carroll, 20 Tex. 731; Waggoner v. Waggoner, 111 Va. 325, 68 S. E. 990, 30 L. R. A. (N. S.) 644; Showalter's Ex'rs v. Showalter's Widow, 107 Va. 713, 60 S. E. 48; Owens v. Andrews, 17 N. M. 597, 131 Pac. 1004, 49 L. R. A. (N. S.) 1072.

It is clear there was not an express election by Mrs. Dunn to take under the will. 1 Pomeroy Eq. § 514. So the question is, Was there testimony from which an inference that she elected so to take could have been drawn reasonably? While it appeared, as stated above, that Mrs. Dunn knew her husband had undertaken by his will to dispose of the entire community estate between them, as we understand the record, there was no testimony showing she knew of what that estate consisted, or its value, nor what the rents, revenues, etc., thereof amounted to annually; and certainly there was no testimony showing that she knew she had a right to elect whether she would take under the will or not until she was so advised by her attorney about two weeks before she died. There is no pretense in the testimony that after that time she did or said anything indicating an intention to take under the will. On the contrary, the testimony indicates that, after she was advised by her attorney that she had such a right, she then determined, if she had not done so before, not to take thereunder.

And it did not appear, as it must have to have warranted a finding that Mrs. Dunn elected to take under the will, that it gave her "free, disposable property" she otherwise would not have been entitled to. The property belonging to the community estate was worth about $30,000, and consisted of lands, indebtedness due the estate, and $5,811.53 in money, subject to check in banks. Mrs. Dunn owned half, or about $15,000 worth, of the property, and was entitled to the "rents, revenues, profits, interest and income" derivable from that half, and to the use of the homestead while she lived, in lieu of all of which, had she elected to take under the will, she would have been entitled to the use of the homestead, perhaps, and, in addition thereto, at most, to the "rents, revenues, profits, interest and income" derivable from all, instead of half, the property, but charged, it should be noted, with the support and maintenance in a comfortable manner of the testator's daughter Mrs. Wright. That, we say, is the most she would have been entitled to. She probably would have taken less, for, when the devise to her is considered with reference to the fourth and sixth items in the will, we are inclined to think it should be construed as giving to her only such part of the rents, revenues, etc., of the property as was necessary to comfortably support her and Mrs. Wright, and that the testator intended that the excess, if any, of such rents, revenues, etc., above the part thereof necessary for that purpose should be added to the corpus of the property and distributed with it after the death of Mrs. Dunn and Mrs. Wright among the other devisees named in the will. It will not be out of place to note here that, while the testator seems to have provided, as stated, for the disposition of any excess of income above the amount necessary to support Mrs. Dunn and Mrs. Wright, he made no provision whatever for the support of either of them in the event the income from the property for any reason should be or become insufficient for the purpose.

It appeared from testimony of appellant W. F. Dunn as a witness that $15 to $22.50 a month was "a reasonable amount for the support of Mrs. Mary E. Dunn. It was not shown directly what amount was necessary to provide a "comfortable support" for Mrs. Wright. Assuming that such support for her would have cost about the sum W. F. Dunn thought would be sufficient to provide for the support of Mary E. Dunn, the latter would have been entitled to receive from the community estate, had she chosen to take under the will, for her own and Mrs. Wright's support, from $30 to $45 a month. The testimony indicated that the sum she actually did receive for that purpose during the time intervening between her own and her husband's death was about the sum of $35 per month. The testimony also showed that the income of the estate for 1917, the year E. E. Dunn died, was at least as much as $1,238.31. As Mrs. Dunn was entitled to one-half that sum, or $619.15, as well as to half the corpus of the property, and received less than $200 thereof, it is plain she did not receive of the estate "free, disposable property" she was entitled to only in the event she elected to take under the will.

As we understand the record, there was an entire absence of testimony tending in the least to show that Mrs. Dunn said or did anything which any one named in the will had a right to say constituted an estoppel in his favor. Therefore the contention that the trial court erred when he instructed the jury as he did is overruled.

[2] It was not error to refuse to permit appellants W. F. Dunn, J. N. Edens, and O. E. Hyndman to testify over Mrs. Vinyard's objection as to transactions they, respectively, had with Mary E. Dunn, and as to statements she made to them, respectively. Said W. F. Dunn, J. N. Edens, and O. E. Hyndman were executors of E. E. Dunn's will, and were sued as such by Mrs. Vinyard, who was executrix of Mary E. Dunn's will, and sued as such. The proposed testimony was properly excluded because within the inhibition in article 3690, Vernon's Sayles' Statutes, as follows:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

[3] The sole ground of the objection to the act of the trial court in appointing a receiver to take charge of the property until the partition could be made is that he was without power to make such an appointment, and so deprive independent executors of right conferred on them by the will. Clearly the court had the power (1 Tardy's Smith on Receivers [2d Ed.] § 80; Alderson on Receivers, § 73), and the assignments presenting the contention to the contrary are therefore overruled.

[4] At the trial appellants admitted that E. E. Dunn made advancements amounting to $5,660.65 to his children out of property belonging to the community estate between him and his said wife, Mary E. Dunn. They insist, however, that in the partition the trial court directed between them and Mrs. Vinyard they were not bound to account for such advancements, and that that court therefore erred when he made one-half of the amount thereof a charge against the part to be allotted to them in the partition. The contention is sustained. The last of the advancements in question was made six or seven years before the death of E. E. Dunn, when his right to control property belonging to the community estate between him and his wife was an absolute one. Article 4622, Rev. St. 1911. The only limitation then existing on his right to "sell, barter, or give it (the community property) away" (Gaines, J., in Moody v. Smoot, 78 Tex. 119, 14 S. W. 285) was that he must not do so for the purpose of defrauding his wife. (Martin v. McAlister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; Rowlett v. Mitchell, 52 Tex. Civ. App. 589, 114 S. W. 845). As it was not pretended in either the pleadings or the evidence that the advancements were made for that purpose, there was no basis for the award on account thereof in favor of Mrs. Vinyard.

Other contentions presented by assignments are regarded as without merit, and are overruled.

So far as the judgment is in Mrs. Vinyard's favor for anything on account of advancements made by E. E. Dunn to his children, it will be reformed, so as to deny a recovery by her on that account, and as so reformed it will be affirmed.