**SHAW v. SHAW et al.**

No. 903.

Court of Civil Appeals of Texas. Waco.

April 3, 1930.

Rehearing Denied May 15, 1930.

174

Callicutt & Upchurch, of Corsicana, for appellant.

Richard & A. P. Mays and Lawrence Treadwell, all of Corsicana, and W. M. Taylor, of Big Spring, for appellees.

GALLAGHER, C. J.

The principal issues in this case involve the ownership and disposition of certain personal and real property owned or claimed by B. J. Shaw, deceased, at and shortly prior to his death. Mrs. Annabel Shaw, hereinafter designated as appellant, was married to B. J. Shaw, hereinafter designated as the deceased, June 14, 1900. Excepting a short temporary separation, they lived together as husband and wife until some time in May, 1913. Appellant at that time left her home and never returned. L. J. Shaw, hereinafter designated as appellee, is the only child of said marriage. He was born in the year 1901. Mary Shaw and Mary Lou Shaw, also appellees herein, are appellee L. J. Shaw's wife and daughter, respectively. When the final separation between appellant and her deceased husband occurred appellee remained with his father. Practically all the property on hand at the time of the separation remained in the possession of the deceased. No demand for the possession of any of the same as the separate property of appellant was ever made. Neither was it shown that any such claim was ever asserted by appellant until after his death, which occurred June 2, 1928. About twenty days before his death, deceased gave to appellee five certain time certificates of deposit issued by the Corsicana National Bank. He at the same time also gave appellee Liberty bonds of the face value of $350, with instructions to deliver the same to appellee's wife and daughter.

The deceased, B. J. Shaw, left a will, which upon application of appellee was duly probated on July 3, 1928. No executor was named in said will and the court found that no administration was necessary. The deceased by said will bequeathed to appellant, if living, the sum of $10, to his granddaughter, Mary Lou Shaw, $3,000 to his daughter-in-law, Mary Shaw, $3,000, and to appellee, L. J. Shaw, the remainder of his estate, both personal and real.

Appellee cashed one of the certificates of deposit to defray funeral expenses of the deceased. The bank which issued the same refused to pay the remaining four certificates, amounting in the aggregate to $8,338.87, on the ground that appellant was setting up some claim thereto. Appellee then brought this suit against the bank to recover on said certificates. The bank answered admitting liability thereon but alleged that appellant was claiming some interest therein, and also set out the provisions of the will of the deceased and impleaded appellant, Mrs. Mary Shaw and her minor daughter, Mary Lou Shaw. It alleged its willingness to pay the money in controversy to whomever the court adjudged entitled to receive the same, and asked for an attorney's fee for filing its bill of interpleader.

Appellant answered the bank's interpleader by alleging that the certificates of deposit in controversy were community property of the deceased and herself and owned by them jointly and equally at the time of his death. She further alleged that if the deceased attempted to give said certificates of deposit to appellee, that the same was done for the purpose of defrauding her out of her half interest therein. She further alleged that after her marriage to the deceased she delivered to him certain moneys which she owned at the time of her marriage, and that he used the same, or a part thereof, in making the cash payment on a certain piece of property purchased shortly after their marriage and used by them as a homestead while they continued to live together. She also claimed as her separate property the household furniture, the piano, and a certain horse in the hands of the deceased at and after their separation. She also claimed a half interest in

all other property in the possession of the deceased at the time of his death, including said Liberty bonds. She asked that the entire estate of the deceased, including said certificates of deposit and Liberty bonds, be partitioned, that her separate claims be recognized and that she be compensated therefor, and that she be awarded her community interest in the remainder of such property.

Appellee, by supplemental pleading, alleged that appellant had abandoned the deceased and removed to the state of California; that she had thereafter, at some time and place unknown to him, secured a divorce from the deceased and thereafter on August 31, 1920, married another man. He further alleged that, if he was mistaken with reference to such divorce, appellant had acquired and then held valuable properties in the state of California, and asked that she be charged with the value of the same in any partition ordered by the court in this cause.

The four certificates of deposit in controversy amounted in the aggregate to $8,338.87, as aforesaid. The fifth certificate of deposit, which was cashed by appellee and used to defray in part the burial expenses of the deceased, was for the sum of $318.36. In addition to said certificates of deposit and the $350 in Liberty bonds, delivered by the deceased to appellee in his life time, his personal estate consisted of one Liberty bond of the face value of $50, $55 in cash; one promissory note for the sum of $137, and a gold watch and chain. The real estate consisted of two certain lots of land with the improvements thereon, used as a homestead as aforesaid and of the estimated value of $3,000. There was on deposit in said bank as rentals received therefrom since the death of the deceased the sum of $192. Other facts pertinent to the respective issues of law hereinafter discussed will be stated in connection with such discussion.

The case was submitted to the jury on seventeen special issues. For convenient reference, the original numbering of these issues is preserved. The principal issues submitted and the findings of the jury in response thereto are as follows:

"Question No. 1: Did defendant, Annie Bell Shaw, after her marriage to B. J. Shaw, give to the said B. J. Shaw the sum of $650.00, which she had accumulated before her marriage to B. J. Shaw, if she had, and which was used by the said B. J. Shaw in the payment for lots numbers 2 and 3, block No. 408 and constituting their homestead in the city of Corsicana, Texas? Answer 'yes' or 'no.' Answer: No.

"Question No. 2: Did defendant Annie Bell Shaw turn over to her husband, B. J. Shaw, after her marriage, at different times, sums of money aggregating $850.00, which money was loaned by the said B. J. Shaw for her? Answer: No.

"Question No. 4: Did B. J. Shaw, previous to his death at Houston, Texas, give to his son, Louis J. Shaw, as a gift, the four certificates of deposit introduced in evidence before you, together with $350.00 in Liberty bonds; said Liberty bonds to be given by plaintiff to his wife and daughter? Answer 'yes' or 'no.' Answer: Yes.

"Question No. 5: If you have answered question No. 4 'yes,' then did B. J. Shaw give the four certificates and Liberty bonds in said question to his son, Louis J. Shaw, for the purpose of defeating Annie Bell Shaw's claim to her interest therein, if any she had? Answer 'yes' or 'no.' Answer: No.

"Question No. 6: Did the defendant, Annie Bell Shaw, abandon her husband, B. J. Shaw, in the year 1913, without just cause? Answer 'yes' or 'no.' Answer: Yes.

"Question No. 7: Has the defendant, Annie Bell Shaw, ever been divorced from B. J. Shaw? Answer 'yes' or 'no.' Answer: No.

"Question No. 9: Did B. J. Shaw in his lifetime give to the defendant, Annie Bell Shaw, the household and kitchen furniture, including piano, to be her separate property? Answer 'yes' or 'no.' Answer: No."

Other issues were submitted and findings thereon made by the jury but none of the same affect the disposition of this appeal. The court rendered judgment on such findings in favor of appellee against the bank, appellant and his coappellees, for the amount of the principal and interest due on the four certificates of deposit in controversy, and in favor of appellees Mary Shaw and Mary Lou Shaw against appellant for the title and possession of the Liberty bonds given to them by the deceased. He also rendered judgment against appellant denying her any recovery as compensation for separate money claimed to have been turned over by her to the deceased. He declared all the other property as above recited the community property of appellant and deceased, appointed a receiver to sell the same, and directed that out of the cash on hand and proceeds of such sale certain taxes and costs be paid, and one-half the remainder turned over to appellant.

## Opinion.

■ Appellant, by various propositions, contends that the court erred in failing to hold as a matter of law, or in the alternative, in failing to instruct the jury that she owned a half interest in the certificates of deposit and Liberty bonds which the deceased delivered to appellee before his death. Appellee introduced in evidence the record of a ceremonial marriage entered into by appellant with one Henry J. Stump in the state of California on August 31, 1920. The law, in def-

erence to the presumption of her innocence and the regularity of such marriage, indulged the further presumption that her prior marriage to the deceased had been dissolved by a divorce prior thereto. Nixon v. Wichita Land & Cattle Co., 84 Tex. 408, 412, 19 S. W. 560; Holman v. Holman (Tex. Com. App.) 288 S. W. 413, 414–5; Floyd v. Fidelity Union Casualty Co. (Tex. Civ. App.) 13 S. W. (2d) 909, 912. Such presumption was rebuttable, but it cast upon appellant the burden of adducing evidence to the contrary. She testified, in substance, that she had never been divorced from the deceased and that she had entered into such second marriage under a mistaken impression or belief, that her continued separation and the failure of the deceased to contribute to her support gave her the legal right to contract a second marriage. She further testified that she and her second husband separated at once and that she had secured a decree annulling or dissolving such marriage. She was, however, an interested witness and her credibility and the weight to be given her testimony were questions for the jury. The court properly submitted the issue of a divorce from the deceased to the jury and he was not justified in anticipating what their finding in response thereto would be. Appellee introduced testimony tending to show that the major part of said certificates of deposit represented the earnings of the deceased subsequent to the date of appellant's marriage to said Stump. Had she been divorced from the deceased at that time, she would of course have had no further interest in such subsequent earnings. The court did not err in the matters here discussed.

◼ Appellee testified that the deceased, about twenty days before his death, delivered to him the five certificates of deposit as a gift to him, and $350 in Liberty bonds as a gift to his wife and daughter. The court submitted the issue thus raised to the jury for determination by question No. 4, hereinbefore quoted, and the same was answered in the affirmative. The court also submitted the issue of the fraudulent intent, if any, of the deceased in making such gifts, to the jury for determination by question No. 5, as aforesaid, and the same was answered in the negative. Appellant presents various propositions complaining of such submissions. She contends in this connection that the pleadings did not raise an issue of a gift of said bonds by deceased to his son's wife and child. Appellant alleged that appellee had taken and converted a large amount of Liberty bonds belonging to the community estate of her deceased husband and herself. Such allegation and the denial of the same by the other parties raised an issue with reference to what Liberty bonds, if any, belonged to the community estate at the death of the deceased, and whether the acceptance and taking of said bonds by appellee from the hands of the deceased and the delivery of the same to the donees thereof constituted a conversion of such bonds. The finding of the jury that the deceased did deliver the same to appellee as a gift to appellee's wife and daughter, and that in doing so it was not his purpose to defeat appellant's claim to her interest therein, if any, established that such particular bonds did not at the death of the deceased constitute any part of the community estate, and that the action of appellee in the premises did not constitute a conversion thereof.

◼ Appellant also contends that question No. 4 was duplicitous. No such objection was interposed when the charge was submitted to appellant for examination and criticism, and such objection was therefore waived.

◼ Appellant contends that the court erred in overruling her objection to the submission of question No. 5. The ground of such objection was that the deceased could not give her one-half interest in such certificates and bonds to appellee as a matter of law. Appellant also contends that the negative answer of the jury to said question No. 5 is without support in the evidence. Appellant by the tender of two separate special issues requested the submission of the question of fraudulent intent on the part of the deceased in making the gift of said certificates of deposit to appellee. She cannot therefore be heard to complain of the action of the court in overruling her said objection, nor to question the sufficiency of the evidence to justify the submission of such issue, nor to contend that the finding of the jury thereon was without support in the evidence or contrary thereto. Hanrick v. Hanrick, 110 Tex. 59, 173 S. W. 211, 214 S. W. 321, par. 2; Farmers' Life Ins. Co. v. Wolters (Tex. Com. App.) 14 S.W.(2d) 58, 59, par. 1; Commerce Farm Credit Co. v. Torrance (Tex. Civ. App.) 7 S. W.(2d) 1110, 1111, 1112, par. 2, and authority there cited. Aside from the issues of invited error and estoppel, the deceased had under the statute and existing circumstances, while the marital status continued, the sole right to dispose of the community property. R. S. Art. 4619, Gen. Laws Reg. Session 40th Leg., p. 219, § 1 (Vernon's Ann. Civ. St. art. 4619) Mr. Justice Gaines, in Moody v. Smoot, 78 Tex. 119, 123, 14 S. W. 285, 286, in speaking of the nature and extent of such right, said: "The wife's interest in the common property after the community debts are paid is equal to that of the husband. He has the sole management during the life of his wife; but it is a mistake to assume that it is only in this respect that their rights and obligations in regard to that property differ. His control of it during her life is absolute. *Barring any disposition made with intent to defraud her, he may sell, barter, or give it away.*" (Italics ours.)

See, also, in this connection: Dunn v. Vinyard (Tex. Com. App.) 251 S. W. 1043, 1048; Id. (Tex. Civ. App.) 234 S. W. 99, 103, par. 4; Martin v. McAllister, 94 Tex. 567, 570, 63 S. W. 624, 56 L. R. A. 585; Lindly v. Lindly (Tex. Civ. App.) 109 S. W. 467, 469, 470, and authorities there cited (affirmed 102 Tex. 135, 113 S. W. 750, 754); Rowlett v. Mitchell, 52 Tex. Civ. App. 589, 114 S. W. 845, 847, 848; Stramler v. Coe, 15 Tex. 211, 217; Krenz v. Strohmeir (Tex. Civ. App.) 177 S. W. 178, 179, par. 2 (writ refused); Smith v. Smith, 12 Cal. 216, 73 Am. Dec. pages 533, 535, 536.

█ Appellant complains of the fact that the court in his charge placed on her the burden of proof on question No. 5, relating to the intent, if any, of the deceased to defeat her interest in the certificates of deposit and Liberty bonds by giving the same to appellee and his wife and daughter, respectively. Appellant pleaded that deceased was actuated by such intent in making such gifts, and she by two separate special issues requested the submission of the existence of such intent to the jury. The court did not err in placing upon her the burden of proof thereon. Howell v. Hanrick, 88 Tex. 383, 394, 29 S. W. 762, 30 S. W. 856, 31 S. W. 611, Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593, 595, pars. 1 to 4; City of Corsicana v. King (Tex. Civ. App.) 3 S.W.(2d) 857, 864, par. 15.

█ Appellant presents propositions complaining of the action of the court in refusing to submit to the jury her special requested issues asking, in substance, whether the deceased had given to her, prior to the separation, his interest in the horse on hand at that time, and the value of such horse. Appellant alleged that at the time of such separation "she owned a horse of the value of $250.00, which was community property or her separate property," and sought a recovery for such value, with interest. She testified on the trial that the mother of this colt belonged to the deceased; that she died when it was one day old and that the deceased told her that if she would undertake the care and trouble of raising it, she might have it. She further testified that she did raise it and that it was one or two years old at the time of the separation, and was worth $250. She further testified that the deceased, after the separation, sold the same but that she did not know when, for what price, nor to whom it was sold. She did not disclose how she knew that such sale had been made. Appellee testified that the colt was defective and of little value. He further testified that it was not sold, but died shortly after the separation. Appellant nowhere alleged that the deceased sold said horse and appropriated the proceeds of such sale, nor that such proceeds, if any, increased to that extent the community estate remaining in his hands. Whether such allegations were necessary to support a recovery by her for its value need not be determined. We may concede that the jury might have found in answer to the issue requested by her that the deceased did give his interest in said horse to her, but such finding, standing alone, would not have authorized a recovery in her favor for its value to be satisfied out of the property on hand at the death of the deceased. The only basis for such a recovery found in the testimony is the statement by appellant that the deceased sold said horse and thereby converted the same. Her testimony on this point was contradicted by appellee, who claimed that the horse died. Appellant made no request for the submission of this controverted issue. In the absence of a finding in her favor thereon, the refusal of the issue of appellant's separate ownership of said horse and its value did not constitute reversible error. Pickett v. Dallas Trust & Savings Bank (Tex. Com. App.) 24 S.W.(2d) 354, 355, par. 1, and authorities there cited.

█ Appellant complains of the manner in which the issue presented in question No. 1 above quoted was submitted, on the ground that the jury were thereby required to find that the specific sum of $650 of appellant's separate money was used in purchasing the homestead, or that none of her money was so used. She also complains of the refusal of her specially requested charge on such issue. Appellant testified that the initial payment on the homestead was $650, and that the same was paid out of her separate funds turned over by her to the deceased at the time of such purchase. She pleaded that the deferred payments on the homestead were made out of community property. There was no testimony that any of the money she claimed to have turned over to her husband was in fact applied to discharging the deferred payments on such property. The whole issue was raised by her testimony alone. The issue as submitted conformed strictly thereto. Appellant did not except to the manner in which such issue was submitted. She requested the submission of a special issue but such issue called for a finding in gross as to the amount, if any, of her separate funds used in paying for the homestead either at the time of purchase or afterwards. The rights acquired by her, had she furnished her separate money in making the initial payment on the property, would have been essentially different from the rights acquired had she contributed out of her separate funds to the discharge of deferred payments thereon. Parker v. Coop, 60 Tex. 111, 116; Allen v. Allen, 101 Tex. 362, 367, 107 S. W. 528; Jackson v. Jackson (Tex. Civ. App.) 258 S. W. 231, 232. Besides, as hereinbefore shown, any contention that her separate money was used in discharging the deferred payments is precluded by her pleadings. The matters complained of do not constitute reversible error.

Appellant complains of the action of the court in allowing the bank an attorney's fee, and making the same a charge upon the property partitioned and directing the payment of the same out of the proceeds of such property before division among the parties adjudged entitled to receive the same. Appellant's claim to an interest in the certificates of deposit was the reason why the bank declined to pay the same to appellee and filed such interpleader. The bank was entitled to the protection offered by interpleading the rival claimants to said certificates. The amount of such fee was fixed by a finding of the jury. The action of the court complained of was proper. Great Southern Life Insurance Co. v. Kinney (Tex. Civ. App.) 276 S. W. 741, and authorities there cited.

Appellant testified that she had accumulated since the separation and owned at the time of trial certain personal and real property situated in the state of California. She also testified that she owed debts in excess of the value of such property. The jury found that she owned property in said state of the value of $5,000, and that she owed debts in the same amount. The court adjudged all such property to her and none of the same was taken into account or charged to her in the partition ordered. Appellant's propositions contending that the trial court was without jurisdiction over that part of the community estate held by her in the state of California, and that the court erred in submitting any issues concerning the same, are therefore immaterial to the disposition of this appeal and need not be further considered.

Appellant has submitted sixty-five separate propositions for consideration as ground for the reversal of the judgment of the trial court in this cause. We cannot of course discuss them all. We have, however, examined all the same and are of the opinion that none of them require or justify such action, and the judgment is therefore affirmed.