## JOHNSON v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### Nos. 10704, 10705.

Circuit Court of Appeals, Eighth Circuit.
March 31, 1937.

Justin D. Bowersock, of Kansas City, Mo. (Robert B. Fizzell and John F. Rhodes, both of Kansas City, Mo., on the brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

These are petitions to review an order of the Board of Tax Appeals redetermining deficiencies in the income taxes of W. D. Johnson for the years 1927, 1928, and 1929, which petitions have been consolidated. In determining these deficiencies, it was held that the taxpayer, in calculating the amount of his income, was not entitled to deduct, as taxable to his wife, who filed a separate return, one-half of the total income received by him from certain property which he designated in his returns as "community property."

The taxpayer, W. D. Johnson, married his wife in Texas in 1886. He then owned an interest in a mercantile business, which interest had a value of about $2,000 or $3,000. His wife had no property. They resided in Texas until 1899, where the taxpayer engaged in the mercantile business, in the cattle business, in banking, and in lending money on cattle. He removed from Texas to Missouri in 1899, where he has since resided, with the exception of about a year spent in California. The property possessed by him when he became a resident of Missouri consisted of cattle, ranches, notes and interests in the mercantile and banking enterprises, all acquired while he lived in Texas.

In 1902 the taxpayer and three others purchased 126,000 acres of Texas land at $2 an acre. They made an initial cash payment of $30,000 and gave notes for the balance, secured by a mortgage on the land. Long before 1927 this land was sold for $756,000, and the notes were paid from the proceeds of the sale.

In 1913 the taxpayer and R. M. Clayton purchased 30,720 acres of Texas land, giving cash and notes for the purchase price, and taking a deed to R. M. Clayton and the taxpayer. As partners they operated this tract as a ranch until January 1, 1928, when R. M. Clayton sold his interest in the cattle and leased his interest in the land to his son, A. M. Clayton, who then became the taxpayer's partner in the ranch operations.

Since 1914 the taxpayer and A. M. Clayton, as partners, have been operating another ranch in Texas known as the Forty-Nine Ranch. That land was also purchased with cash and notes, and was deeded to A. M. Clayton and the taxpayer.

Prior to 1928 the taxpayer and his son, as partners, operated a ranch in Texas. For about seven or eight years they owned the ranch jointly, but in 1928 the taxpayer deeded his interest to his son, retaining a half interest in the oil and minerals.

During the taxable years in question, the taxpayer owned other lands in Texas and elsewhere, parts of which were used for ranching purposes. Two of these other ranches were operated during 1927, 1928, and 1929 by a Mr. Finley and a Mr. Goedeke. Prior to 1928 both Finley and Goedeke worked on a salary and profit-sharing basis; the taxpayer furnishing the cash for purchasing cattle, and Finley and Goedeke giving him notes to cover the cost. Subsequent to 1928, Finley worked on a salary basis only.

The taxpayer operated a loan company in Kansas City, Mo., known as the Western Cattle Loan Company. At different times he acted as a director of three Kansas City banks.

The taxpayer's first set of books was opened in 1908. A trial balance taken at that time showed a capital of $876,389.30 as of February 1, 1908. Since that time, as before, his extensive real estate and ranching ventures as well as his banking and money lending required the investment and reinvestment of capital. He testified that: "This capital came from the funds, nucleus or the capital we had when we came from Texas. It all grew from that source. * * * My part of the capital employed in the cattle loan business came out of my resources derived from the capital I had when I left Texas and the accumulation by use of that capital and use of my personal efforts—coupled with my personal efforts since coming from Texas."

The taxpayer's books list assets of a book value of $2,123,053.53 at the end of 1927, $1,700,810.89 at the end of 1928, and $1,908,310.17 at the end of 1929. All of these assets were acquired after he moved to Missouri. The assets owned by him and his wife when they left Texas had been liquidated prior to 1927 and the proceeds invested and reinvested.

On direct examination, the taxpayer testified: "I may have borrowed money from time to time, and probably did. I had good credit, due to my showing." On recross-examination he testified that: "Some of those investments might have been made out of money that I borrowed at the bank and later paid."

As to his income from personal services the taxpayer testified: "I took compensation for some services rendered to the Western Cattle Loan Company and to the bank, but that was only where there

were corporations. Nothing was deducted out of my own assets for services rendered." From 1916 to 1928 he earned salaries of $91,504.42.

The taxpayer and his wife filed joint returns for the years up to and including 1926. For the years 1927, 1928, and 1929 they filed separate returns. In his separate returns for those years the taxpayer reported as income taxable to him one-half of the amount of income received by him from "community property." In 1927 and 1928, income from community property, as shown by his returns, consisted of income derived from the Texas properties; in 1929, income from community property, as reported by him, included income received by him from all sources except from salaries.

The Commissioner determined that the entire income received from "community property" constituted income of the taxpayer in each of the taxable years in question. The Board of Tax Appeals upheld the Commissioner's determination in this respect, and found a deficiency in tax for 1927 in the amount of $19,709.37, for 1928 of $15,600.23, and for 1929 of $16,245.21.

The question presented is whether the taxpayer, in determining the amount of his income, was entitled to deduct, as taxable to his wife, one-half of the total income which he received during 1927, 1928, and 1929 from property which he listed in his tax returns as "community property."

The taxpayer contends that all assets which he and his wife owned at the time they left Texas [such assets are not specifically enumerated nor is their value shown by the evidence] were community property; that all assets held by him in 1927, 1928, and 1929 grew out of this community property and were therefore held by him as trustee for the benefit of himself and his wife in equal shares; and that one-half of the income from such assets was therefore taxable to his wife.

It is conceded by the Commissioner, as it must be, that the taxpayer's wife, under the laws of Texas, had a half interest in the property which the taxpayer acquired during marriage while a resident there. Texas Revised Civil Statutes, art. 4619; Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249. Her beneficial interest in such property was in all respects equal to that of the taxpayer, although he had the power of control over

the property as long as he discharged his obligations as the head of the family. Davis v. Davis (Tex.Civ.App.) 186 S.W. 775, 777; Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139, 1143; Mercury Fire Ins. Co. v. Dunaway (Tex.Civ.App.) 74 S.W.(2d) 418. The taxpayer and his wife had the same equality of interest in any property deeded to him alone as in any property which may have been conveyed to them jointly, except that in the former instance her title to an undivided one-half interest was equitable only [Elliott v. Wallace (Tex.Com.App.) 59 S.W. (2d) 109; Anderson v. Gazaway (Tex.Civ. App.) 80 S.W.(2d) 481], and the taxpayer, in whom the legal title was vested, held his wife's undivided one-half interest in trust for her. Mitchell v. Schofield, 106 Tex. 512, 171 S.W. 1121, 1122; Carter v. Barnes (Tex.Civ.App.) 16 S.W.(2d) 136. However, the taxpayer's wife had no right to a partition of the community property during coverture so long as they resided in Texas. Givens v. Givens (Tex. Civ.App.) 195 S.W. 877, 879; Coleman v. Coleman (Tex.Civ.App.) 293 S.W. 695, 699.

It is also conceded by the Commissioner that the taxpayer's wife did not lose her rights in the community property when she and the petitioner removed from Texas to Missouri, where the community property law is not in force. Depas v. Mayo, 11 Mo. 314, 49 Am.Dec. 88; Edwards v. Edwards, 108 Okl. 93, 233 P. 477.

■ The burden was upon the taxpayer to establish error in the Commissioner's determination, by showing that some portion of the income received by him during the taxable years in question was income of his wife which was not taxable to him. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; Universal Steel Co. v. Commissioner of Internal Revenue (C.C.A. 3) 46 F.(2d) 908; Marquette Oil Distribution Co. v. Commissioner of Internal Revenue (C.C.A. 8) 73 F.(2d) 205, 212; Whitlow v. Commissioner of Internal Revenue (C.C.A. 8) 82 F.(2d) 569, 571.

■ The Board found, in effect, that while it was impossible to determine from the evidence how much of the taxpayer's income was attributable to the proceeds and increment of the original community property, more than one-half of the income attributed by the taxpayer to community property was, in fact, taxable to him. If this finding is supported by substantial evidence and justifies the conclusion reached by the Board, the decision of the Board should be affirmed. Randolph v. Commissioner of Internal Revenue (C.C.A. 8) 76 F.(2d) 472, 476; General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154; Helvering v. Rankin, 295 U.S. 123, 131, 132, 55 S.Ct. 732, 79 L.Ed. 1343; Phillips v. Commissioner, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Twin City Tile & Marble Co. v. Commissioner (C.C.A. 8) 32 F.(2d) 229; Whitlow v. Commissioner of Internal Revenue (C.C. A. 8) 82 F.(2d) 569, 572. "And even though the evidence before the Board is undisputed, the finding of the Board will not be disturbed by this court if different inferences may reasonably be drawn from such evidence. Helvering v. Ames (C.C. A. 8) 71 F.(2d) 939, 943." Randolph v. Commissioner of Internal Revenue, supra.

■ The taxpayer did not attempt to trace the proceeds of the assets owned by him and his wife when they left Texas. He claims, in effect, that one-half of all of his assets must, in equity, belong to his wife because they were acquired with the proceeds or increment of community property which they owned when they came to Missouri in 1899. We think that the evidence justifies the inference that the taxpayer made profitable use of his individual credit and the $91,504.12 received by him as salaries from 1916 to 1928, and that his individual efforts, credit, and funds resulted in the acquisition of substantial assets which could not properly be regarded as trust or community property. We are therefore of the opinion that such evidence sustains the Board's finding that more than one-half of the amount of the entire income reported by the taxpayer as derived from community property was taxable to him, and that he did not sustain the burden of proving that one-half of it was taxable to his wife. It is apparent from the evidence, however, that the taxpayer and his wife owned a substantial amount of community property when they removed from Texas to Missouri in 1899. What the value of that property was cannot be determined from the evidence. One-half of it, whatever its value, the taxpayer held in trust for the use and benefit of his wife. Depas v. Mayo, 11 Mo. 314, 49 Am.Dec. 88; Edwards v. Edwards, 108 Okl. 93, 233 P. 477. Therefore, one-half of the income

956

derived from assets acquired with the proceeds or increment of the original community property was not taxable to the taxpayer, but to his wife. It cannot be said, however, that the Commissioner's determination that the income received by the taxpayer was taxable to him was arbitrary, since the taxpayer did not show what specific property or what definite portion of the entire property possessed by him in 1927, 1928, and 1929 was attributable to the original community property, and therefore failed to furnish a basis for ascertaining how much of the income received by him was trust income taxable to his wife. But it is apparent that the issue actually presented to and actually determined by the Commissioner and the Board was whether one-half of the income received by the taxpayer in the years in question was taxable to his wife, and was not whether some definite portion less than one-half of the income received by him was taxable to her. Under the peculiar circumstances of this case, we think that after the Board (which had both the right and the duty to redetermine the deficiencies assessed, if erroneous) had found that more than one-half of the entire income received by the taxpayer during those years was taxable to him, it should have afforded him an opportunity to produce evidence to show whether it would be possible to ascertain what portion of the assets possessed by him and what portion of the income received by him during the years in question were trust assets and trust income not taxable to him, and, if so, to establish the correct amount of the tax for which he was liable.

The decision of the Board of Tax Appeals in so far as it constitutes a determination that more than one-half of the income received by the taxpayer during the years 1927, 1928, and 1929 and reported by him as derived from community property, was taxable to him, is affirmed. The case is remanded to the Board of Tax Appeals, with directions to give to the taxpayer an opportunity to produce evidence to establish what portion of the income received by him during those years was taxable to him and what portion was taxable to his wife. In case evidence is produced which will enable the Board to segregate the income taxable to the taxpayer from that taxable to his wife, the Board is directed to redetermine the deficiencies assessed.