THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, TRUSTEE AND ALLEGED TRANSFEREE OF MARIE ELIZABETH MORAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48652. Filed December 22, 1955.

---

*Thomas A. Ryan, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, and *Robert J. Cowan, Esq.*, for the respondent.

## OPINION.

RAUM, *Judge:* Respondent has determined that Marie had a community property interest in the three trusts, consisting of one-half of the principal of the Inter Vivos Trust and Testamentary Trust and

one-half of the proceeds of the policies in the Insurance Trust. She had the right to demand and receive, subject only to the payment of community debts, any community property interest she may have had after coverture ended as a result of Daniel's death. It is respondent's position that in failing to demand the interest which he has determined she owned at the death of her husband, she relinquished that interest and thereby made taxable gifts to the remaindermen under each trust to the extent of her community interest therein less the life estate reserved in that interest.

Petitioner, on the other hand, denies that any taxable gift was made by Marie after Daniel's death. It insists that there was no donative intent, and that Marie simply exchanged her community property rights, if any, for life interests in a larger principal in a transaction deemed by her to be to her economic advantage. It then argues that if it should be held that there were taxable gifts, the value of such gifts should consist of the value of the interest transferred less not merely the value of the life interest retained by Marie in her one-half, but the value of her life estate in the entire property, in the case of each trust. It also contends that in the case of the Insurance Trust and the Inter Vivos Trust, Marie did not have a community property interest at the date of Daniel's death, because any such interest, according to petitioner, ended when the trusts were created back in 1928. Finally, it is contended that irrespective of the merits, a deficiency cannot be determined against petitioner, because no timely attempt was ever made to collect the deficiency from Marie, and there is no showing that Marie is insolvent or financially unable to pay the amount of tax claimed by respondent to be due.

It is not necessary to the operation of the gift tax that the donor affirmatively go through a ritual of making a gift. The basic gift tax provisions before us have been continuously in effect since 1932, and the report of the House Ways and Means Committee accompanying the bill which ultimately became the Revenue Act of 1932 stated (H. R. Rept. No. 708, 72d Cong., 1st Sess., p. 27):

The terms "property", "transfer", "gift", and "indirectly" are used in the broadest and most comprehensive sense; * * *

See also S. Rept. No. 665, 72d Cong., 1st Sess., p. 39; *Smith* v. *Shaughnessy*, 318 U. S. 176, 180. It has been established that the failure to exercise a right to recapture property or to disaffirm a voidable or revocable transfer may itself constitute an effective transfer of the property subject to gift tax. *Commissioner* v. *Allen*, 108 F. 2d 961 (C. A. 3), certiorari denied 309 U. S. 680; *Adele F. Goodman*, 4 T. C. 191, affirmed 156 F. 2d 218 (C. A. 2). Accordingly, if Marie had community property rights in the corpora of the three trusts which she abandoned in favor of the life interests which she accepted, she has

plainly made gifts to the extent that the value of the interests thus surrendered exceeded the value of her life estates. It has been stipulated that Daniel at no relevant time owned any separate property, and it follows that the corpus of each of the trusts had its source in community property of Daniel and Marie. It thus becomes necessary to examine Marie's position under Texas law respecting community property.

In Texas, a wife's interest in community property is not a mere expectancy. It is vested, and equal to that of her husband. *Hopkins* v. *Bacon*, 282 U. S. 122, 126; *Johnson* v. *Commissioner*, 88 F. 2d 952, 954 (C. A. 8); *Edwards* v. *Edwards*, 108 Okla. 93, 101, 233 Pac. 477, 485. During coverture the husband, while he continues to honor his duties as the head of the family, has complete and exclusive right of management and control over the property thus owned by the community. He may dispose of such property in any manner he sees fit, as long as he does not act with the purpose of defrauding his wife, and may even make gifts therefrom. Cf. *Locke* v. *Locke*, 143 S. W. 2d 637, 638 (Tex. Civ. App.); *Shaw* v. *Shaw*, 28 S. W. 2d 173, 176 (Tex. Civ. App.).

In all that he does with respect to community property, however, the husband acts not as an owner, but as the active or managing member of the community. There is no common-law concept exactly congruous to his relation to community property. In Texas he is said to be like a trustee. Cf. *King* v. *Bruce*, 145 Tex. 647, 654, 201 S. W. 2d 803, 807, certiorari denied 332 U. S. 769; *Arnold* v. *Leonard*, 114 Tex. 535, 545, 273 S. W. 799, 804. Whatever the terminology, however, it is clear that in Texas the wife is a present owner of a one-half interest in all community property. *Arnold* v. *Leonard*, *supra*. When coverture ends as a result of the death of the husband, or for some other reason, this interest becomes the separate property of the wife, and her interest becomes active and possessory rather than passive as it had been during coverture, subject only to the payment of community debts. Cf. *Sneed* v. *Commissioner*, 220 F. 2d 313, 314 (C. A. 5); *Waterman Lumber & Supply Co.* v. *Robins*, 159 S. W. 360, 364,365 (Tex. Civ. App.), modified 206 S. W. 825 (Com. App.). Thus, while the husband, in disposing of the entire "bundle of rights," may in some circumstances dispose of the wife's interest along with his own, he cannot transfer or extinguish merely her rights while retaining his own, or convert community property into his separate property. Cf. *Keller* v. *Keller*, 135 Tex. 260, 267, 141 S. W. 2d 308, 311; *Rowlett* v. *Mitchell*, 52 Tex. Civ. App. 589, 592, 114 S. W. 845, 847; *Martin* v. *Moran*, 11 Tex. Civ. App. 509, 511, 32 S. W. 904, 906.

We now turn to the three trusts in question, beginning with the Inter Vivos Trust.

## The Inter Vivos Trust.

This trust was clearly testamentary. Daniel gave away nothing while he lived. Not only did he reserve the income to himself for life, but he retained plenary powers to revoke and, in effect, deal with the corpus as though no trust had been created. The rights and powers retained by him amounted to full beneficial ownership. Such a trust would clearly be ineffective to shift the incidence of the Federal income tax. Cf. sec. 166, I. R. C. 1939; *Helvering* v. *Clifford*, 309 U. S. 331. Petitioner has cited no authority to the effect that under the laws of Texas it would be deemed sufficient to pass a present interest, and the decisions of the Texas courts indicate otherwise. Cf. *Armington* v. *Gilcrease Oil Co.*, 190 S. W. 2d 587, 595 (Tex. Civ. App.); *Fleck* v. *Baldwin*, 141 Tex. 340, 345, 172 S. W. 2d 975, 978. And see *Bridewell* v. *Clay*, 185 S. W. 2d 170, 172 (Tex. Civ. App.); *Postal Mut. Indemnity Co.* v. *Penn*, 165 S. W. 2d 495, 499 (Tex. Civ. App.). The principal of the trust thus remained community property after as well as before the transaction of November 2, 1928. Any transfer made thereby can be effective, if at all, only as a testamentary transfer. A testamentary disposition by the husband of community property purportedly including his wife's interest as well as his own is not binding on the wife, and cannot deprive her of her interest in such property unless she elects to abide by the terms thereof. Cf. *Delevan* v. *Thom*, 244 S. W. 2d 551, 554 (Tex. Civ. App.); *Rowlett* v. *Mitchell, supra*, 52 Tex. Civ. App. at p. 592, 114 S. W. at p. 847; *Martin* v. *Moran, supra*, 11 Tex Civ. App. at p. 511, 32 S. W. at p. 905.

Nor is the result affected by the application of section 12–a [1] of the Personal Property Law of New York. Under these provisions a trust established by a nonresident settlor may be so created as to be governed as to validity and effect by the laws of New York. Assuming that petitioner is correct in its contention as to the comprehensive scope of these provisions, the same result must follow even under New York law. It is well settled in New York that a purported transfer by a spouse, whereby the transferor retains during his lifetime in substance the same control and enjoyment of rights he had in respect of such property prior to the transfer is illusory, and cannot deprive a surviving spouse of her right to an intestate or elective share in such property. *Newman* v. *Dore*, 275 N. Y. 371, 377, 379, 9 N. E. 2d 966, 968, 969; *Hirschfield* v. *Ralston*, 66 N. Y. S. 2d 59, 61; *In re Sanchez'*

---

[1] § 12–a. **Validity of trusts of personal property.**

Whenever a person being a citizen of the United States, or a citizen or a subject of a foreign country, wherever resident, creates a trust of personal property situated within this state at the time of the creation thereof, or of which the trustee is a resident of this state, or a domestic corporation or national bank located within this state, duly auhorized by law to act as trustee, and declares in the instrument creating such trust that it shall be construed and regulated by the laws of this state, the validity and effect of such trust shall be determined by such laws.

*Estate*, 58 N. Y. S. 2d 230, 238. Moreover, such transfers are deemed "fraudulent" as to such surviving spouse, the lack of bona fides relating not to any intent to deprive the survivor of an elective or intestate share, but rather to the absence of any intent on the part of the transferor to divest himself of what he purports to transfer. Cf. *Newman* v. *Dore, supra*, 275 N. Y. at p. 379, 9 N. E. 2d at p. 969; *Hart* v. *Hart*, 81 N. Y. S. 2d 764, 767; *In re Sanchez' Estate, supra*, at p. 238.

In New York the right of a surviving spouse to share in the estate as an elective or statutory heir is a mere expectancy. Cf. *Newman* v. *Dore, supra*, 275 N. Y. at p. 376, 9 N. E. 2d at p. 967; *Brindisi* v. *Stallone*, 21 N. Y. S. 2d 29, 31. A transfer deemed illusory and ineffective as to such surviving spouse must *a fortiori* be incompetent to divest a spouse of a community property interest which *vested* prior to the making of such transfer.

Apart from the foregoing analysis of New York law, an even more compelling reason dictates the result to be reached. The power of any State to divest vested property rights merely because property has been transferred to its physical jurisdiction, or even because the owners of interests therein have changed their residence to such jurisdiction raises serious constitutional questions. Cf. *Abraham B. Johnson et al.*, 7 B. T. A. 820, 831; *Brookman* v. *Durkee*, 46 Wash. 578, 583, 90 Pac. 914, 915. It has often been held that in such circumstances community property is not converted into separate property or separate property into community property. Cf. *Johnson* v. *Commissioner, supra*, 88 F. 2d at p. 955; *Estate of Emma Frye*, 44 B. T. A. 835, 842; *Robert H. Lord*, 30 B. T. A. 425, 428; *T. C. Phillips*, 9 B. T. A. 153, 156; *King* v. *Bruce, supra*, 145 Tex. 647, 654, 201 S. W. 2d 803, 807; *Edwards* v. *Edwards, supra*, 108 Okla. at p. 101, 233 P. 2d at p. 485; *Succession of Popp*, 146 La. 464, 472, 83 So. 765, 768. And see *In re Thornton's Estate*, 1 Cal. 2d 1, 33 P. 2d 1, where the Supreme Court of California held unconstitutional a statute of that State purporting to change separate property of a spouse into community property upon a change of residence from a non-community property State to California.

Assuming the validity and effect of the Inter Vivos Trust to be governed generally by the laws of New York, it does not follow that New York would attempt to go so far as to divest previously vested property rights under the guise of applying its general rules of law to the trust in question, merely because similar rights would not have been acquired in New York under the same facts. The words of section 12–a do not require such a construction, and it is highly doubtful that the courts of New York would needlessly adopt a construction of its laws which would raise the foregoing constitutional question. Nor has petitioner brought to our attention any authority which indi-

cates that in New York there is any doubt as to the validity of community property interests acquired elsewhere. We therefore hold that since Daniel in no way changed his relation to the trust property Marie's interest was likewise unaffected. When she chose to abide by the terms of the trust by accepting payments of income thereunder, she elected to waive and surrender her community property interest in the principal thereof, and thereby made a taxable gift.

It is of no consequence that, as contended by petitioner, Marie may have considered the transaction to be advantageous to her. Neither section 1002 of the Internal Revenue Code of 1939 [2] nor section 86.8 of Regulations 108 [3] promulgated thereunder limits the imposition of the gift tax to transfers falling within the classic common-law concept of gifts. Section 1002 includes as a taxable gift a transfer of property "for less than an adequate and full consideration in money or money's worth." Thus a taxable gift may be made despite the fact that something of value may have been received in exchange for the property constituting the subject matter of the gift, where the property received is less in "money or money's worth" than that transferred. In such case there is a taxable gift to the extent that "the value of the property exceeded the value of the consideration." The regulations recognize an exception to the literal words of the statute where there is an arm's-length bargaining situation without any donative intent, and one party has simply made a better bargain for itself than has the other. We are satisfied from the entire record, however, that there was here no such arm's-length relationship of persons bargaining one with the other "in the ordinary course of business," and the words of section 1002 must therefore be literally applied. Cf. *Robinette* v. *Helvering*, 318 U. S. 184, 188.

The next issue is the amount of the gift. Respondent contends that the gift consisted of the value of Marie's one-half interest in the principal less the value of a life estate in one-half of the principal. We agree with petitioner, however, that the value of the gift must be re-

---

[2] SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.
 Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

 [3] Sec. 86.8. TRANSFERS FOR A CONSIDERATION IN MONEY OR MONEY'S WORTH.—Transfers reached by the statute are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration in money or money's worth to the extent that the value of the property transferred by the donor exceeds the value of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth. A consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift.

duced by the value of the life estate received by Marie in the entire principal. By failing to assert her community property rights, Marie made a gift of her one-half interest in the principal minus her life estate in the entire principal. The trust which she accepted in lieu of her community property interest in the principal was a single package; there were not two trusts, one based upon the principal representing her one-half and the other upon her husband's one-half; and we know of no basis under Texas law whereby she could have disaffirmed one-half of the trust while at the same time retaining the benefits of the other one-half. Indeed, in the Testamentary Trust, hereinafter considered, the instrument expressly stated that the provision for Marie was to be in lieu of all rights due her as surviving spouse; and what was explicit in that trust was plainly implicit in the Inter Vivos Trust. What she in fact did was to accept the trust which gave her a life estate in the entire principal in exchange for her full interest in one-half of the principal.

### *The Insurance Trust.*

Daniel retained virtually the same degree of control over this trust during his lifetime as he did with respect to the trust already discussed, and the premiums were paid with community funds. Superficially, it would seem, therefore, that the same result should be reached here as in the case of the other trust. However, there appear to be differences in the law of Texas with respect to the surviving spouse's interest in the proceeds of life insurance policies that call for a different result.

It is true that under Texas law the wife is regarded as having a community property interest in the cash surrender value of policies on the husband's life where the premiums were paid out of community funds; and, in the event of termination of coverture during the lifetime of the spouses, the wife may successfully assert her rights to a one-half interest in an amount equal to such cash surrender value. *Womack* v. *Womack*, 144 Tex. 299, 172 S. W. 2d 307; *Berdoll* v. *Berdoll*, 145 S. W. 2d 227 (Tex. Civ. App.) ; *Locke* v. *Locke*, 143 S. W. 2d 637 (Tex. Civ. App.) ; *Russell* v. *Russell*, 79 S. W. 2d 639 (Tex. Civ. App.). Cf. *Joe J. Perkins*, 1 T. C. 982, 985. However, the law of Texas appears to be that where the marriage is terminated by the death of the husband, the *proceeds* of the policies are payable to the named beneficiary and the wife does not have any community property interest that can be asserted against such proceeds. Cf. *Jones* v. *Jones*, 146 S. W. 265, 269 (Tex. Civ. App.) ; *Rowlett* v. *Mitchell, supra*, 52 Tex. Civ. App. at p. 592, 114 S. W. at p. 847; *Martin* v. *McAllister*, 94 Tex. 567, 569, 63 S. W. 624, 625. Furthermore, it has been held that upon the death of the insured husband any cash surrender value the policy may have had during his lifetime lapses, and no claim based upon a supposed interest in such cash surrender value can succeed.

*Volunteer Life Ins. Co.* v. *Hardin,* 145 Tex. 245, 197 S. W. 2d 105; *San Jacinto Bldg.* v. *Brown,* 79 S. W. 2d 164 (Tex. Civ. App.).

The distinction may appear to be a bit unusual, but we must take the law of Texas as we find it. Until the Texas courts indicate otherwise, we must assume that the foregoing cases correctly establish the law of Texas, and they appear to hold that the wife has no community property interest in the proceeds of the policies upon the husband's death. In the circumstances, Marie did not have any community property rights in the insurance trust upon Daniel's death, and therefore cannot be treated as having made a gift based upon her failure to assert such rights.

### The Testamentary Trust.

The principal of this trust was admittedly owned by the community up to the time of Daniel's death. The factors requiring us to hold that a taxable gift was made in respect of the Inter Vivos Trust apply with at least as much force here. *Delevan* v. *Thom,* 244 S. W. 2d 551, 554 (Tex. Civ. App.); *Rowlett* v. *Mitchell,* 52 Tex. Civ. App. 589, 592, 114 S. W. 845, 847; *Martin* v. *Moran,* 11 Tex. Civ. App. 509, 511, 32 S. W. 904, 905. We therefore hold that Marie's acquiescence in this trust constituted a taxable gift to the extent of her community one-half of the principal less the life estate reserved by her therein, reduced by the value of the life estate received by her in the other one-half of the trust as consideration.

In determining the value of the gift made by Marie in respect of the Testamentary Trust we have not ignored the provision conferring upon the trustee the discretionary power to distribute principal. This power is one which the trustee has the right to use or not to use, as it wishes, but it does not represent anything given to or received by Marie that is capable of valuation. Petitioner has cited authority to the effect that under the laws of New York such a provision enables a trustee to distribute to the income beneficiary the entire corpus of the trust. *In re Bisconti's Will,* 306 N. Y. 442, 119 N. E. 2d 34. But it has cited no case, and we know of none, which permits the beneficiary, by virtue of such provision, to require the trustee to distribute any part of the principal of a trust against its wishes. The amount of the taxable gift may not be reduced by reason of a possibility, over which Marie had no control and which is incapable of valuation, that the corpus or a part of it might be paid over to her. Cf. *Robinette* v. *Helvering,* 318 U. S. 184, 188–189.

### Transferee Liability.

Petitioner takes the position that it may not be proceeded against as a transferee because no action was ever taken by respondent to

collect the deficiency from the donor, there is no showing that she is or ever was insolvent or unable to pay the amount of the deficiency, and the deficiency was first asserted against petitioner as transferee after expiration of the time within which the deficiency could have been asserted against Marie.

The liability of a transferee for gift tax due from its transferor is governed by section 1025 of the Internal Revenue Code of 1939.[4] It has been consistently held that under that provision the only requirement for the assertion of a deficiency in gift tax against a transferee is that the transferor did incur a gift tax liability and failed to pay such tax when due. The conditions necessary for the assertion of an *income* tax liability of a transferor against a transferee do not apply here. *Mississippi Valley Trust Co.* v. *Commissioner*, 147 F. 2d 186 (C. A. 8) ; *Baur* v. *Commissioner*, 145 F. 2d 338 (C. A. 3) ; *Evelyn N. Moore*, 1 T. C. 14, affirmed 146 F. 2d 824 (C. A. 2) ; *Fletcher Trust Co., Trustee*, 1 T. C. 798, affirmed 141 F. 2d 36 (C. A. 7), certiorari denied 323 U. S. 711. The foregoing cases require that this issue be resolved against the petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

Murdock, *J.*, dissenting: I think that the Commissioner correctly determined the amounts of the gifts and those gifts should not be further reduced by the value of Marie's life estate in that property which was contributed to the trusts by her deceased husband.

The theory of the majority opinion is that the husband in paragraph FIFTH of his will intended to put into his residuary testamentary trust not only his own share of the property of the community which was dissolved by his death but also Marie's share; Marie would lose her life estate in the property contributed to that trust by her husband

---

[4] SEC. 1025. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in the tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a donor, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed by this chapter.

(2) FIDUCIARIES.—The liability of a fiduciary under section 3467 of the Revised Statutes (U. S. C., Title 31, § 192) in respect of the payment of any such tax from the estate of the donor.

Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

(b) PERIOD OF LIMITATION.—The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows :

(1) Within one year after the expiration of the period of limitation for assessment against the donor.

unless she permitted her share of the community property to be included in that trust; and since she allowed her property to go into the trust she received as consideration for that transfer her life estate in the property contributed to the trust by her husband.

Her husband had no legal right to dispose of her property by his will, and it seems wrong to conclude as a matter of law that he did so under the terms of paragraph FIFTH of his will. I do not understand how he could impose binding conditions in his will dependent solely upon what Marie would do with her own property. Paragraph SEVENTEENTH of the will imposed no real penalty upon Marie had she chosen to consider that her share of the community property following the death of her husband was not included in his testamentary trust. It does not appear that under the laws of Texas she had any dower rights or other rights, as the widow of her deceased husband, of the kind mentioned in paragraph SEVENTEENTH. Certainly she did not acquire her right to one-half of the community property as widow of her deceased husband. She had that right during their marriage. Had she accepted the FIFTH paragraph of his will as applying to the property owned by her husband at the time of his death but not as applying to her property at that time, she could have received the life estate in the property which he properly and legally placed in his testamentary trust and her transfer to the same trust of property which belonged to her at the death of her husband was not consideration for the life estate which her husband gave her in his property.

The position of the majority in relation to the Inter Vivos Trust seems definitely weaker because as to that trust there was no condition whatsoever attached so far as the Findings of Fact show, and I see no reason why Marie, when she learned about the trust for the first time at the death of her husband, could not have withdrawn her property from that trust and at the same time enjoyed the life estate in the property of her deceased husband which would then remain in the trust.